IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **PAUL TREPAGNIER** § § § *Plaintiff,* § § **v.** § § **BDO USA LLP,** § § *Defendant.* § § § | CIV. A. NO. _____ <br><br> **JURY DEMANDED** |

## ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Paul Trepagnier ("Trepagnier") brings this complaint, seeking a declaratory judgment against BDO USA LLP, ("BDO") pursuant to 28 U.S.C. §2201 and §2202, and Federal Rule of Civil Procedure 57. Additionally, after Trepagnier has exhausted his administrative pre-requisites, he plans on filing additional claims of age and gender discrimination and retaliation arising under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §623 *et seq,* and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001, *et seq* (hereinafter the "TCHRA"). Because his discrimination and retaliation claims are related to the declaratory relief sought in this Complaint, Trepagnier provides background on those future claims within this Complaint and will seek leave to amend this complaint to add such claims in the future.

### PARTIES, JURISDICTION, AND VENUE

1.      Trepagnier is a male. Trepagnier is a United States citizen and he resides in Dallas, Texas and was living in the same location at the time of the events giving rise to this litigation.

2.      BDO is a foreign limited liability partnership with over 5000 employees and locations throughout Texas and the United States. BDO's principle offices are in Chicago, but Trepagnier worked out of BDO's Dallas office. BDO can be served via its registered agent of service Corporation Service Company, 211 E 7th St., Suite 620, Austin TX 78701-3218.

3.      This court has jurisdiction to hear the merits of Trepagnier's claims under 28 U.S.C. §§ 1331 and 1332.

4.      A substantial portion of the acts and omissions underlying Trepagnier's claims—including his unlawful termination and post EEOC charge retaliation—occurred in the Northern District of Texas. Venue is proper in this district and division under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

5.      BDO terminated Trepagnier on December 31, 2019.

6.      Trepagnier, a male, was 60 years old at the time BDO terminated him.

7.      Until his termination, Trepagnier was an outstanding employee for BDO.

8.      Trepagnier began his employment with BDO in January 2011.

9.      BDO hired Trepagnier as a "Tax Partner" when he was 51 years old.

10.     Despite his title of "partner," Trepagnier was an employee for the purposes of statutory coverage under the ADEA, Title VII, and the Texas Labor Code with respect to discriminatory and retaliatory actions against him by BDO.

11.     The test for whether a person is an "employee" or a non-employee for purpose of state and federal law prohibiting employment discrimination is a fact specific, functional test, focused primarily on whether that person is free from control or direction.

12. Under the United States Supreme Court decision in *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440 (2003) and under the guidelines of the EEOC in its Compliance Manual, Trepagnier clearly was an employee, covered by federal civil rights statutes.

13. Throughout his employment with BDO, Trepagnier never had "control" of BDO. He had a "job" and BDO treated him as an "employee" regardless of his "partner" title.

14. While a small number of top equity-leadership partners at BDO ran the firm and are not employees of BDO, the factors used by the EEOC and under the TCHRA to determine whether, regardless of title (such as independent contractor or partner) a worker is an "employee" indicate Trepagnier was an employee, from the time he started work in January 2011 until BDO terminated him on December 31, 2019.

15. These are the bullet points in the EEOC COMPLIANCE MANUAL: Number 915.003 as found at https://www.eeoc.gov/policy/docs/threshold.html#2-III-A-1-d:

- Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work

- Whether and, if so, to what extent the organization supervises the individual's work

- Whether the individual reports to someone higher in the organization

- Whether and, if so, to what extent the individual is able to influence the organization

- Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts

- Whether the individual shares in the profits, losses, and liabilities of the organization

16. The same EEOC COMPLIANCE MANUAL states as an example:

Example 1 – CP works for an accounting firm and has the title of partner. The firm pays CP a salary, and CP is supervised by an individual at a higher level. CP receives a share of the firm's profits in addition to his salary, but he does not have

any input into decisions made by the firm, which are made by higher-level partners. While CP has the title of partner, he is in fact an employee.

17. As evidenced by his unilateral termination, BDO could hire and fire Trepagnier and set the rules and regulations of his work.

18. BDO also supervised Trepagnier's work at BDO.

19. At all times at BDO, Trepagnier reported to someone higher in BDO.

20. At the time of his termination by BDO, Trepagnier had the following reporting structure:

   a. Trepagnier reported to Randy Wright, Tax Office Managing Partner for the Dallas Office;

   b. Randy Wright reported to Ron Martin, Southwest Regional Managing Partner for Tax;

   c. Ron Martin reported to Matt Becker, Managing Partner of Tax;

   d. Matt Becker reported to Stephen Ferrara, Chief Operating Officer;

   e. Steve Ferrara reported to Wayne Berson, Chief Executive Officer; and

   f. Wayne Berson reported to the Board of Directors

21. While employed at BDO, Trepagnier effectively had no ability to influence the organization. On the national level:

   a. The Executive Team and the BDO Board controlled BDO;

   b. Although partners could vote on who became Board members, the nomination process was controlled by BDO because anyone running for the Board must be approved by a subcommittee of current Board members (i.e. it is a closed process); and

   c. Trepagnier's ownership percentage was so small and insignificant, less than one percent (0.2576%), that he could not influence BDO decision-making on a National level.

22. While employed at BDO, Trepagnier effectively had no ability to influence the organization. On the Dallas Office level:

      a.      Trepagnier could not hire or fire any employee. Randy Wright decided who to hire, fire, promote or demote.

      b.      Trepagnier could not decide how to spend any marketing, business development or operational or operating funds without getting the permission of Randy Wright.

23. On written agreements (Statement of Work and Tax Agreements (T&C), Trepagnier did sign as a partner of BDO but with the significant restrictions. Trepagnier was not authorized to sign any other contracts on behalf of BDO (i.e. he could not sign leases, purchase orders, etc.)

24. BDO sets the Quality Control ("QC") policies that govern when employees and "partners" can accept a new client. Employees and "partners" must go through a client acceptance process.

25. BDO Legal determines the Statements of Work and Tax Agreement language (Terms and Conditions) and employees and "partners" must use these documents for client work.

26. If any deviation is requested by clients of BDO, BDO Legal must approve such deviations.

27. BDO National QC determines what documentation employees and "partners" must have to sign tax returns or take tax positions for clients.

28. For audit clients that employees and "partners" prepare and/or review tax provisions for BDO, BDO's National Audit determines the documentation that is required before there can be approval and sign-off for clients' financial statements.

29. If a BDO "partner" does not follow the QC, Legal Terms for client work, or audit documentation they may be reprimanded or fired.

30. While Trepagnier shared in profits, losses and liabilities, he did so with significant restrictions.

31. The BDO partnership agreement spells out profit sharing, and the BDO Executive Team and Board determined partner unit allocation (units determine our percentage of profits).

32.     The BDO executive team established a bonus policy several years ago that allowed them to award themselves, Board members, and Regional and Office Leadership with bonuses if certain financial targets were met.  The Executive Team, Board, and Regional Leadership gets the majority of this bonus pool.

33.     Randy Wright would determine if Trepagnier and other tax partners would get bonuses each year based on Dallas Tax Department performance vs. Forecast.  This was completely at Randy Wright's discretion.

34.     Under *Clackamus* and under the EEOC guidelines, no one factor is determinative, and the fact finder looks at all factors, and most particularly whether the worker has "control" of the business entity – which clearly, Trepagnier did not.  *Clackamus* and EEOC guidelines are applicable under the TCHRA.

35.     In July 2015 (when Trepagnier was 55 years old), as a result of his excellent performance, BDO promoted him to the position of Dallas Office Managing Partner (OMP) – Tax.  Scott Hendon (who hired Trepagnier in 2011), the SW Regional Managing Partner and OMP of Dallas, was asked to focus on his Regional role and asked Trepagnier to assume the OMP role.  In 2016, Ron Martin was named the Managing Partner for the Southwest Region in a restructuring of BDO's Leadership, and Scott Hendon reported to Ron Martin.  In approximately 2018, Scott Hendon assumed a new role as Leader for the Private Equity Industry Group and as BDO's International Liaison partner.

36.     BDO replaced Trepagnier as Dallas OMP by Randy Wright effective January 1, 2018. Randy Wright was the manager who rated Trepagnier "Very Successful" on his BDO Annual Performance Review for the fiscal year ending June 30, 2018.  All Trepagnier's annual

performance reviews with BDO through June 30, 2018 provided him a rating of "Very Successful" or the equivalent rating.

37. Trepagnier's career with BDO went very well until BDO management suddenly tried to force Trepagnier to resign his employment beginning in late September 2019.

38. BDO then terminated Trepagnier employment on December 31, 2019 based on age and sex discrimination and retaliation for his complaint of age discrimination.

39. On September 27, 2019, Randy Wright and Ron Martin met with Trepagnier to discuss his performance for the June 30, 2019 fiscal year.  Trepagnier had previously submitted his self-evaluation and rated himself as "Very Successful", the 2nd highest performance rating.  Trepagnier also submitted spreadsheets that documented his performance (using a format Randy Wright had provided and asked Trepagnier and others to use).  Trepagnier noted that he had met and exceeded most of his goals for the period up to June 30, 2019.

40. On September 27, 2019, Trepagnier learned that Randy Wright rated Trepagnier as "At Risk", the lowest performance rating. Wright did not present Trepagnier with a copy of the performance review until several hours after the meeting.

41. On October 1, 2019, Randy Wright promoted Carrie Burnett, a female partner in her mid 30's.

42. On October 16, 2019, Randy Wright also hired Kristie Gibson (who upon information and belief is in her 50's) as a tax partner.

43. Randy Wright, because of his preference for working with women, made the promotion and hire of Ms. Burnett and Ms. Gibson.

44. On October 21, 2019, Trepagnier requested a meeting with Randy Wright to discuss the performance review and Trepagnier's concerns about his rating.  Trepagnier and Randy Wright

met for approximately an hour and a half. At this point, Trepagnier did not know that he was going to be terminated. The tone of the meeting was neutral to semi-good until the end of the meeting. At the end of the meeting, Randy Wright stated, "I still don't think we have alignment."

45. On October 24, 2019, Matt Becker, Ron Martin and Randy Wright met with Trepagnier and began BDO's attempt to pressure and force Trepagnier to resign. At the meeting Becker requested Trepagnier withdraw from BDO. Trepagnier was not provided a withdrawal agreement until after the meeting.

46. On November 11, 2019, Ron Martin called Trepagnier to follow up on Trepagnier signing the withdrawal agreement. Trepagnier asked what the cause for BDO was to ask Trepagnier to withdraw. Ron Martin stated that there is a "catch all" phrase in Sec 11.4 of BDO Partnership Agreement that states partners can be forced to withdraw due to material failure to perform his / her duties. He also said he removed Trepagnier from the OMP role because he was concerned about the lack of growth in the Dallas tax practice, and that he wanted Trepagnier to focus on growing large corporate tax practice due to Trepagnier's connections in the market. He stated there were no new wins since Trepagnier's role changed due to Trepagnier efforts. He also stated Trepagnier was not on the same page with Randy Wright.

47. These "reasons" were a pretext for age and gender discrimination. None of these items Ron Martin mentioned were listed in Trepagnier goals for these years.

48. At the end of the November 11th meeting, Trepagnier told Mr. Martin that he needed more time to make a decision.

49. At BDO Trepagnier was disfavored for continued employment because he was perceived as (and treated as) a "blocker;" Trepagnier was "blocking" younger hires on their way up and

because he was a male employee who was perceived of as "in the way" of BDO's efforts to hire and promote female employees.

50. Randy Wright engaged in a pattern of hiring young females into BDO and included a false statement in his otherwise favorable ("Very Successful") appraisal for the period ending June 30, 2018: "From a people standpoint Paul needs development in two areas – working with high performing women and treating people equally."

51. On November 18, 2019, BDO continued to pressure Trepagnier to resign. Ron Martin called Trepagnier and requested an update, and then requested that Trepagnier provide a counteroffer to BDO's offer. He stated BDO wanted to avoid a BDO Board vote and wanted to avoid the BDO arbitration process. He told Trepagnier that he had been part of one BDO arbitration case, that it was not pleasant, and that it took 18 to 24 months to resolve. He said he spent 4 or 5 days in New York City with BDO and a partner's attorneys in that matter.

52. On November 19, 2019 BDO continued to pressure Trepagnier to resign. Ron Martin called Trepagnier and said he was expecting Trepagnier's counteroffer. Trepagnier told him he was still working on it and it would not be ready until the next day. At that point, Ron Martin became upset. Matt Becker also continued to pressure Trepagnier to resign. Becker left Trepagnier a voicemail message later that afternoon (at 4:58 PM) asking if Trepagnier planned to respond with a counteroffer and stated, "We are running out of time".

53. On November 21, 2019, Trepagnier notified BDO, by letter to Matthew Becker, that he had a "strong claim for age discrimination." Trepagnier lawyer's letter, referring to Trepagnier and his claim, stated:

> Though he is called a "partner," it is readily apparent that he is not treated as a partner and he would be considered an "employee" under both Texas and Federal age discrimination law. BDO's mandatory retirement policy, which requires retirement on June 30th of the fiscal year in which Variable Share Partners reach

age 62 is discriminatory on its face. From my review of the facts, it is also apparent that BDO routinely terminates partners and employees because of their age and replaces them with substantially younger employees or partners. Discovery will be necessary on this issue, but it is already evident that there is an age bias as BDO requires mandatory retirement of partners within the company based purely on age, and numerous Variable Share Partners are pushed out before they can reach age 62 or older.

54. Trepagnier's November 21, 2019 letter also made a counteroffer to BDO, which BDO rejected.

55. Over a month later, BDO sent Trepagnier a termination letter on December 31, 2019.

56. The letter, signed by Kelly Johnson, Chair of the Board, with a courtesy copy to Wayne Berson, CEO, stated, "you are hereby notified that your partnership interest in BDO USA, LLP, has been terminated for cause pursuant to Section 11.5(e) of the Partnership Agreement, effective immediately.

57. The letter did more than terminate Trepagnier's partnership interest. The letter terminated Trepagnier's job at BDO. Ms. Johnson's letter made this clear by stating:

> To the extent you have not already done so, you are expected to return all BDO computer equipment, client flies, and any and all other BDO Confidential information and property to the Firm so that it is received no later than January 6, 2020.

58. BDO has a pattern or practice of terminating "partners" based on age. BDO literally enforces a mandatory retirement policy, based on age. In addition, BDO has a pattern or practice of forcing "partners" who are at or near age 60, to withdraw, and/or of terminating their employment under the guise of terminating their partnership interest (and confiscating their BDO property) if BDO's efforts to pressure older employees to sign "withdrawal agreements" are unsuccessful.

59. BDO furthers this pattern or practice of terminating "partners" based on age (a) by taking the position that employees covered by the ADEA are "partners" who lack statutory protection

from age discrimination under the ADEA and applicable state laws that protect employees from age discrimination, (b) by threatening such employees with a rigged arbitration process whereby an employee must bring his or her claim of age discrimination for a "conclusive and binding" decision by an arbitration panel consisting of two members of BDO's Board of Directors (other than the Chief Executive Officer) selected by BDO's Board of Directors and three Partners from BDO's practice offices who are not members of BDO's Board of Directors, (c) by insuring that the BDO Board of Directors mutually agrees to the members of the arbitration panel, and (d) by insuring that the conduct of the arbitration shall be in accordance with such procedures as the BDO Board of Directors adopts and communicates to the Partners.

60. On January 23, 2020, Trepagnier timely filed a charge of gender and age discrimination and retaliation against BDO with the Equal Employment Opportunity Commission ("EEOC") and co-filed that charge with the Texas Workforce Commission ("TWC").

61. Trepagnier's charge will have been on file for 60 days as of Monday March 23, 2020. At that time, pursuant to the ADEA, he may bring his federal age discrimination and ADEA retaliation claims before this court. Trepagnier's Title VII and TCHRA charges will have been on file for 180 days as of Tuesday, July 21, 2020. At that time, pursuant to Title VII and the TCHRA, he may bring his Title VII and TCHRA discrimination and retaliation claims before this court.

62. BDO's Amended and Restated Partnership Agreement ("Agreement"), within Paragraph 14.7, purports to require any controversy or dispute between a partner and BDO to be resolved by arbitration wherein the arbitration panel shall consist of two members of the Board of Directors (other than the Chief Executive Officer) selected by the Board of Directors and three Partners from the Partnership's practice offices who are not members of the Board of Directors. Therefore, the

potential panel of arbitrators is to consist entirely of BDO employees or principles rather than any neutral.

63. BDO's Agreement, within Paragraph 16.10, purports to be governed by the laws of Delaware, except for Paragraph 14.7 (the arbitration provision), which purports to be governed by the laws of the State of New York.

64. New York law states that any mandatory arbitration provision which requires the parties to the contract to submit to mandatory arbitration to resolve any allegation or claim of discrimination in violation of laws prohibiting discrimination, is contrary to law and is therefore null and void. Therefore, under New York Law, the arbitration provision within BDO's Agreement is null and void. *See* New York Civ. Practice Law and Rules §7515: Mandatory arbitration clauses; prohibited.

## CAUSES OF ACTION

### COUNT ONE: DECLARATORY JUDGMENT

65. Trepagnier incorporates by reference the above paragraphs.

66. Trepagnier brings a claim for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §2201 and §2202, and Federal Rule of Civil Procedure 57.

67. Trepagnier seeks a declaration that he is properly classified as an "employee" under Texas and Federal discrimination law under the ADEA, Title VII, and the TCHRA.

68. Trepagnier additionally and/or in the alternative seeks a declaration that the arbitration provision within BDO's Amended and Restated Partnership Agreement violates Texas law in that it purports to have any arbitration ruled upon by arbitrators chosen from BDO's own board and from BDO's partners. BDO's arbitration provision does not allow for one or more neutral arbitrators, and instead, BDO sits as the judge and jury of any dispute. Such provision is contrary

to well established principles of law and should be declared against public policy, void and unenforceable.

69. Trepagnier additionally and/or in the alternative seeks a declaration that under New York Law, the arbitration provision which purports to apply to "any controversy or dispute" is void and unenforceable because it seeks to apply to discrimination claims, which is contrary to New York Law.

70. Because Trepagnier has filed a charge of discrimination and retaliation, and because he was terminated without cause, a justiciable controversy exists as to each issue upon which Trepagnier seeks declaratory judgment.

71. A declaratory judgment on each issue will terminate the uncertainty and insecurity with respect to the parties' rights under the BDO's Amended and Reinstated Partnership Agreement and under federal and state law.

## JURY DEMAND

72. Trepagnier requests a jury trial on all issues, claims, actions, and defenses in this case upon which a jury is allowed.

## PRAYER FOR RELIEF

WHEREFORE, Trepagnier prays that BDO be summoned to appear and answer, and that on final trial, judgment be granted against BDO awarding Trepagnier the following:

a. Declaratory judgment that Trepagnier is an "employee" rather than a "partner" for purposes of Texas and federal discrimination and retaliation law under the ADEA, Title VII, and the Texas Labor Code Chapter 21 (the TCHRA).

b. Declaratory judgment that the arbitration provision within BDO's Amended and Reinstated Partnership Agreement violates Texas Law and is void and unenforceable.

    c.    Declaratory judgment that the arbitration provision within BDO's Amended and Reinstated Partnership Agreement violates New York Law and is void and unenforceable.

    d.    Cost of suit; and

    e.    Other legal and equitable relief to which Trepagnier may justly be entitled.

DATED: February 11, 2020

Respectfully submitted,

**Gillespie Sanford, LLP**
4925 Greenville Ave., Suite 200
Dallas, Texas 75206
Tel.:   (214) 800-5111
Fax:   (214) 838-0001

By  */s/ Hal K. Gillespie*
    Hal K. Gillespie (*Lead Attorney*)
    Texas Bar No. 07925500
    hkg@gillespiesanford.com
    Joseph H. Gillespie
    Texas Bar No. 24036636
    joe@gillespiesanford.com

**ATTORNEYS FOR PLAINTIFF**